UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEDELL HAMMOND,

    Plaintiff,                      No. 15-12051

v.                              District Judge Paul D. Borman
                                  Magistrate Judge R. Steven Whalen

CITY OF TROY, ET AL.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff LeDell Hammond's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction [Doc. #3], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

### I.    FACTS

On the night of August 10, 2014, an armed robbery occurred at a WalMart store in Troy, Michigan.[1] Shortly after the robbery, Troy Police Officer Kramer stopped a black Pontiac Grand Prix in the vicinity of the WalMart. Plaintiff Hammond was the driver, and Aaron Powell was a passenger. Clothing found inside the car matched the description of clothing that the robber wore. Specifically, Officers found a pair of tan-colored boot with black wrapped around the toe. Officers brought a tracking dog to the scene of the stop, and the dog located a silver handgun in the bushes near where Officer Kramer had seen the Grand Prix slow down and drive over a curb. This matched the description of the gun

---

[1] The Troy Police Department's incident reports are attached to Defendants' response [Doc. #17] as Exhibit 1.

used in the robbery. Hammond and Powell were taken into custody.

Officers interviewed Plaintiff Hammond twice. Plaintiff waived his Miranda rights on each occasion, and during the second interview, he said that Powell told him there was a way to make some money. Plaintiff knew that Powell's plan was illegal, but did not know that it involved an armed robbery. Plaintiff said that Powell directed him to the WalMart parking lot, and got out, ostensibly to urinate. Powell came back five to ten minutes later, and told him he needed to get rid of a gun.

Plaintiff's Grand Prix was impounded as evidence and the instrumentality of a crime, as authorized by M.C.L. § 257.252d(1)(e). On August 11, 2014, the Troy Police Department requested Defendant A&M Service Center and Towing to store the car until the conclusion of the criminal proceedings. Plaintiff was ultimately charged with hindering and obstructing the police, driving with a suspended license, driving without lights, and driving with tinted windows. He was not charged with armed robbery. However, Powell, the passenger in the Grand Prix, pled guilty to two counts of armed robbery. Another individual (Mickels) was convicted of two counts of armed robbery by a jury.

On May 4, 2015, the Troy Police Department notified Plaintiff that the "hold" on his car had been removed, and that he could pick it up from A&M. *Memorandum in Support of Motion* [Doc. #3], p. 2.  However, A&M required him to pay storage fees in the amount of $4,545.00. The Troy Police Department confirmed that information. Plaintiff then filed a petition to challenge the storage fees, but the state district court rejected the petition as untimely under the statute. The car remains in storage, and will eventually be auctioned off as an abandoned vehicle.

Plaintiff claims that the seizure and storage of his car, and the refusal to return his

car to him without payment of storage fees, violates his rights under the Fourth Amendment and the Fourteenth Amendment Due Process clause.

## II. STANDARD OF REVIEW

In determining whether to grant a preliminary injunction or temporary restraining order, a court must examine and weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573.

Notwithstanding this balancing approach, however, the likelihood of success is the predominant consideration. Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Plaintiffs bear the burden of demonstrating their entitlement to a preliminary injunction, and their burden is a heavy one. A preliminary injunction or TRO is an extraordinary remedy, "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.; Leary v. Daeschner*,

228 F.3d 729, 739 (6th Cir. 2000). The level of proof required for the Plaintiff to obtain a preliminary injunction or TRO "is much more stringent than the proof required to survive a summary judgment motion." *Id.*

### III. DISCUSSION

#### A. Likelihood of Success

Plaintiff claims that the seizure and impoundment of his car violated the Fourth Amendment and that the Defendants' refusal to return the car to him unless he pays the storage fees violates his rights under the Due Process Clause. He is unlikely to prevail on either claim.

As to the initial stop of Plaintiff's car, "[t]he Fourth amendment...permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop." *United States v. Burton*, 334 F.3d 514, 516 (6th Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996). Officer Kramer observed the Grand Prix being driven at night without lights and with tinted windows, in violation of state law. The traffic stop passes constitutional muster.

Once the stop was effected, the Officer observed clothing in the car that matched the unique description of clothing worn by the robber. In addition, the police (with the help of a dog) found a discarded handgun, matching the description of the gun used in the robbery, in the vicinity of where they saw the Grand Prix slow down and drive over a curb. At that point, the police had probable cause to believe that the car was used in the commission of a crime, and that seizure was necessary to preserve evidence of a crime. Therefore, the impoundment and storage of the car was authorized by M.C.L. §

257.252d(1)(e), which provides as follows:[2]

> "Sec. 252d. (1) A police agency or a governmental agency designated by the police agency may provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last-titled owner of the vehicle in any of the following circumstances:
>
> (e) If the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime."

The seizure and storage of an automobile under this statute was reasonable, and hence not violative of the Fourth Amendment. *Moosdorf v. Krot*, 2006 WL 2644994 (E.D. Mich. 2006)(Duggan, J.)("As the vehicle was used in the commission of a crime, the Officers lawfully seized the vehicle pursuant to Section 257.252d.").

Plaintiff fares no better under his Due Process claim, because there were established and adequate state remedies available to him. In *Davis v. City of Dearborn*, 2011 WL 281050, *2 -3 (E.D.Mich. 2011)(Battani, J.), the Court explained:

> "Finally, to prevail on her procedural due process claim, [Plaintiff] must show that she was 'deprived of property as a result of [an] established state procedure that itself violates due process rights,' which she has not alleged 'or ... that the defendants deprived [her] of property pursuant to a random and unauthorized act and that available state remedies would not adequately compensate for the loss.' *Macene v. MJW, Inc.,* 951 F.2d 700, 706 (6th Cir.1991) (internal quotation marks omitted); *see also Mitchell v. Fankhauser,* 375 F.3d 477, 481–84 (6th Cir.2004) (stating that a plaintiff must plead the inadequacy of state remedies when an alleged due process violation involves a random or unauthorized act)."

The Michigan Vehicle Code sets forth a procedure through which an individual may recover an automobile that was impounded and stored as evidence/instrumentality of a crime. First, under M.C.L. § 257.252d(4), the police agency must release the vehicle before the towing company can return it to the owner. On May 4, 2015, the Troy Police

---

[2] Where probable cause exists to seize a vehicle, it may be seized on public property without a search warrant. *Florida v. White*, 526 U.S. 559 (1999).

notified the Plaintiff that his car had been released, and that he could redeem it at A&M. The Plaintiff then had the right to file a petition under M.C.L. 257.252a(13) to challenge the reasonableness of the towing and storage fees:

> "The owner may contest the fact that the vehicle is abandoned or, unless the towing fees and daily storage fees are established by contract with the local governmental unit or local law enforcement agency and comply with section 252i, the reasonableness of the towing fees and daily storage fees by requesting a hearing. *A request for a hearing shall be made by filing a petition with the court specified in the notice within 20 days after the date of the notice.* If the owner requests a hearing, the matter shall be resolved after a hearing conducted under section 252f. An owner who requests a hearing may obtain release of the vehicle by posting with the court a towing and storage bond in an amount equal to $40.00 plus the accrued towing and storage fees. The owner of a vehicle who requests a hearing may obtain release of the vehicle by paying a fee of $40.00 to the court plus the towing and storage fees instead of posting the towing and storage bond. An owner requesting a hearing but not taking possession of the vehicle shall post with the court a towing and storage bond in an amount equal to $40.00 plus the accrued towing and storage fees." (Emphasis added).

M.C.L. § 257.252e provides that an action under the above sections in a Michigan District Court or Municipal Court is "the exclusive remedies for the disposition of abandoned vehicles."[3] The Plaintiff filed a petition, but the State Court rejected it because he filed it beyond the 20-day limitations period set forth in the statute. That the petition was validly rejected on procedural grounds does not constitute a Due Process violation. As in *Davis v. City of Dearborn*, Plaintiff "has neither alleged nor provided any evidence regarding the adequacy of state remedies." He is therefore unlikely to prevail on his Due Process claim.

### B. Irreparable Harm

A plaintiff's harm from the denial of a TRO or a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *Overstreet, supra*,

---

[3] Therefore, this Court would be without jurisdiction to hear any state law claim regarding the return of his car.

305 F.3d at 578; *Manakee Professional Medical Transfer Serv. v. Shalala*, 71 F.3d 674, 581 (6th Cir. 1995)("[M]onetary damages do not generally constitute irreparable harm."). In this case, if the Plaintiff does not contend that his 2005 Grand Prix is particularly unique or irreplaceable. If he loses the car, he can be fully compensated by money damages if he is ultimately successful in his lawsuit.

### C.    Harm to Others

A&M has incurred costs of approximately $5,000 (at the rate of $15 per day) for storing Plaintiff's car.  As this case moves forward, A&M will continue to incur storage costs if preliminary injunctive relief is granted, and at the same time the car will continue to depreciate, lessening the likelihood that any eventual auction of the car will make it whole.

### D.    The Public Interest

The public has an interest in permitting police departments to preserve evidence–including automobiles–in criminal cases, and to ensure that towing companies and storage facilities are compensated for providing assistance to law enforcement by storing automobiles while criminal cases are pending. The statutory scheme discussed above balances this public interest against the interests of the owners of automobiles by establishing a procedure, consistent with principles of due process, for redeeming the vehicles.

Balancing the four factors, with particular emphasis on the remote likelihood of success on the merits, Plaintiff has not met his heavy burden of showing entitlement to injunctive relief.

## IV.    CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Temporary Restraining

Order ("TRO") and Preliminary Injunction [Doc. #3] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

/s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: July 6, 2015

Certificate of Service

I certify that a copy of the foregoing order was served upon parties of record on July 6, 2015 via electronic or postal mail.

/s/A. Chubb
DEPUTY CLERK