UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEDELL HAMMOND,

    Plaintiff,                         No. 15-12051

v.                                 District Judge Paul D. Borman
                                  Magistrate Judge R. Steven Whalen

CITY OF TROY, ET AL.,

    Defendants.
                                /

## REPORT AND RECOMMENDATION

Plaintiff Ledell Hammond filed a *pro se* civil complaint raising a number of claims against a number of Defendants, centering on the Troy Police Department having impounded his car pending an armed robbery investigation, and his claimed inability to recover his car at the conclusion of the criminal proceedings. Before the Court is Defendant City of Troy's Motion to Dismiss [Doc. #33], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that Defendants City of Troy and Troy Police Department be DISMISSED WITH PREJUDICE.

-1-

## I.   FACTS[1]

On the night of August 10, 2014, an armed robbery occurred at a WalMart store in Troy, Michigan.  Shortly after the robbery, Troy Police Officer Kramer stopped a black Pontiac Grand Prix in the vicinity of the WalMart.  Plaintiff Hammond was the driver, and Aaron Powell was a passenger. Clothing found inside the car matched the description of clothing that the robber wore. Specifically, Officers found a pair of tan-colored boot with black wrapped around the toe. Officers brought a tracking dog to the scene of the stop, and the dog located a silver handgun in the bushes near where Officer Kramer had seen the Grand Prix slow down and drive over a curb. This matched the description of the gun used in the robbery.  Hammond and Powell were taken into custody.

Officers interviewed Plaintiff Hammond twice. Plaintiff waived his Miranda rights on each occasion, and during the second interview, he said that Powell told him there was a way to make some money. Plaintiff knew that Powell's plan was illegal, but did not know that it involved an armed robbery.  Plaintiff said that Powell directed him to the WalMart parking lot, and got out, ostensibly to urinate.  Powell came back five to ten minutes later, and told him he needed to get rid of a gun.

Plaintiff's Grand Prix was impounded as evidence and the instrumentality of a

---

[1] On July 6, 2015, I filed a Report and Recommendation [Doc. #21] regarding Plaintiff's motion for a temporary restraining order. The facts set forth herein are taken in large part from the facts in my previous R&R. Those facts were in turn based on Plaintiff's complaint (superseded by an amended complaint) and the police report concerning the events that led to the impoundment of Plaintiff's car.

crime, as authorized by M.C.L. § 257.252d(1)(e). On August 11, 2014, the Troy Police Department requested Defendant A&M Service Center and Towing to store the car until the conclusion of the criminal proceedings. Plaintiff was not charged with armed robbery. However, Powell, the passenger in the Grand Prix, pled guilty to two counts of armed robbery. Another individual (Mickels) was convicted of two counts of armed robbery by a jury.

On May 4, 2015, the Troy Police Department notified Plaintiff that the "hold" on his car had been removed, and that he could pick it up from A&M. *Memorandum in Support of Motion* [Doc. #3], p. 2. However, A&M required him to pay storage fees in the amount of $4,545.00. The Troy Police Department confirmed that information. Plaintiff then filed a petition to challenge the storage fees, but the state district court rejected the petition as untimely under the statute.

Plaintiff brings claims against the City of Troy and the Troy Police Department under 42 U.S.C. § 1983 for violations of the Fourth Amendment and Fourteenth Amendment Due Process. He also claims gross negligence, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 , and M.C.L. § 257.252.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6)

motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555.  Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as

follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### III. DISCUSSION

#### A. Fourth Amendment

Plaintiff claims that the seizure and impoundment of his car violated the Fourth Amendment.

As to the initial stop of Plaintiff's car, "[t]he Fourth amendment...permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop." *United States v. Burton*, 334 F.3d 514, 516 (6th Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996). Officer Kramer observed the Grand Prix being driven at night without lights and with tinted windows, in violation of state law. The traffic stop passes constitutional muster.

Once the stop was effected, the Officer observed clothing in the car that matched the unique description of clothing worn by the robber. In addition, the police (with the help of a dog) found a discarded handgun, matching the description of the gun used in the robbery, in the vicinity of where they saw the Grand Prix slow down and drive over a

curb. At that point, the police had probable cause to believe that the car was used in the commission of a crime, and that seizure was necessary to preserve evidence of a crime. Therefore, the impoundment and storage of the car was authorized by M.C.L. § 257.252d(1)(e), which provides as follows:[2]

> "Sec. 252d. (1) A police agency or a governmental agency designated by the police agency may provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last-titled owner of the vehicle in any of the following circumstances:
>
> (e) If the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime."

The seizure and storage of an automobile under this statute was reasonable, and hence not violative of the Fourth Amendment. *Moosdorf v. Krot*, 2006 WL 2644994 (E.D. Mich. 2006)(Duggan, J.)("As the vehicle was used in the commission of a crime, the Officers lawfully seized the vehicle pursuant to Section 257.252d.").

## B.   Due Process

Plaintiff has not stated a plausible Due Process claim, because there were established and adequate state remedies available to him to recover his car. In *Davis v. City of Dearborn*, 2011 WL 281050, *2 -3 (E.D.Mich. 2011)(Battani, J.), the Court explained:

> "Finally, to prevail on her procedural due process claim, [Plaintiff] must

---

[2] Where probable cause exists to seize a vehicle, it may be seized on public property without a search warrant. *Florida v. White*, 526 U.S. 559 (1999).

show that she was 'deprived of property as a result of [an] established state procedure that itself violates due process rights,' which she has not alleged 'or ... that the defendants deprived [her] of property pursuant to a random and unauthorized act and that available state remedies would not adequately compensate for the loss.' *Macene v. MJW, Inc.,* 951 F.2d 700, 706 (6th Cir.1991) (internal quotation marks omitted); *see also Mitchell v. Fankhauser,* 375 F.3d 477, 481–84 (6th Cir.2004) (stating that a plaintiff must plead the inadequacy of state remedies when an alleged due process violation involves a random or unauthorized act)."

The Michigan Vehicle Code sets forth a procedure through which an individual may recover an automobile that was impounded and stored as evidence/instrumentality of a crime. First, under M.C.L. § 257.252d(4), the police agency must release the vehicle before the towing company can return it to the owner. On May 4, 2015, the Troy Police notified the Plaintiff that his car had been released, and that he could redeem it at A&M. The Plaintiff then had the right to file a petition under M.C.L. 257.252a(13) to challenge the reasonableness of the towing and storage fees:

> "The owner may contest the fact that the vehicle is abandoned or, unless the towing fees and daily storage fees are established by contract with the local governmental unit or local law enforcement agency and comply with section 252i, the reasonableness of the towing fees and daily storage fees by requesting a hearing. *A request for a hearing shall be made by filing a petition with the court specified in the notice within 20 days after the date of the notice.* If the owner requests a hearing, the matter shall be resolved after a hearing conducted under section 252f. An owner who requests a hearing may obtain release of the vehicle by posting with the court a towing and storage bond in an amount equal to $40.00 plus the accrued towing and storage fees. The owner of a vehicle who requests a hearing may obtain release of the vehicle by paying a fee of $40.00 to the court plus the towing and storage fees instead of posting the towing and storage bond. An owner requesting a hearing but not taking possession of the vehicle shall post with the court a towing and storage bond in an amount equal to $40.00 plus the accrued towing and storage fees." (Emphasis added).

The Plaintiff filed a petition under M.C.L. § 257.252(a), but the State Court rejected it because it was not filed in compliance with the 20-day period set forth in the statute. That the petition was validly rejected on procedural grounds does not constitute a Due Process violation. As in *Davis v. City of Dearborn*, Plaintiff "has neither alleged nor provided any evidence regarding the adequacy of state remedies." Plaintiff was not denied procedural due process.

A claim based on substantive due process also fails. The Supreme Court has held that to constitute a violation of substantive due process, the governmental action must be so egregious as to shock the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Here, the Defendant lawfully impounded a car under a state statute that provides for such where there is reasonable cause to believe it was used in a crime, or if it constituted evidence of a crime. I completely understand that Plaintiff is not pleased with the disposition of his car, but perhaps other than his own, no consciences have been shocked.

### C.   M.C.L. § 257.252

M.C.L. § 257.252e provides that an action under the above sections in a Michigan District Court or Municipal Court is "the exclusive remedies for the disposition of abandoned vehicles." Therefore, this Court does not have subject matter jurisdiction to consider Plaintiff's claim under this State statute.

### D. RICO

RICO, 18 U.S.C. § 1962(c) provides in relevant part:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a "pattern of racketeering activity" consisting of at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5).

The Plaintiff's complaint contains no factual allegations that would plausibly support a RICO claim under the pleading standard of *Iqbal*. At most, her "facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.

### E. Gross Negligence

The Defendant City is immune from a negligence claim under the Michigan Tort Liability Act, M.C.L. § 691.1407, unless the Plaintiff showed gross negligence, *id.* § 691.1407(2)(c). The act defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(7)(a).

Again, Plaintiff's car was impounded under a valid Michigan statute, and Plaintiff had an established and adequate procedure available to reclaim the car. He has not pled

any facts that would plausibly support a theory of gross negligence.

### F. The Troy Police Department

Under Michigan law, a municipal police department is merely a creature of the municipality, and, as such, it cannot be sued independently. *See* M.C.L. § 92.1. The Sixth Circuit has held that "[a] suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n. 1 (6th Cir.1994) (citing *Moomey v. City of Holland*, 490 F.Supp. 188, 190 (W.D.Mich.1980).

The City of Troy is the real party in interest, although it should be dismissed for the reasons stated above. Independent of those reasons, the Troy Police Department should be dismissed because it is not an entity that is capable of being sued.

### IV. CONCLUSION

I recommend that Defendant City of Troy's Motion to Dismiss [Doc. #33] be GRANTED, and that Defendants City of Troy and Troy Police Department be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/ R. Steven Whalen
                                                  R. STEVEN WHALEN
                                                  UNITED STATES MAGISTRATE JUDGE

Dated: February 26, 2016

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 26, 2016, electronically and/or by U.S. mail.

                                                    s/Carolyn M. Ciesla
                                                    Case Manager to the
                                                    Honorable R. Steven Whalen